## Docket No. 24-6150

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

KELLYE CROFT,

*Plaintiff-Appellant,*

v.

JAMES DOLAN, et al.,

*Defendants-Appellees.*

_____

*Appeal from a Decision of the United States District Court for the Central District of California,*
*Los Angeles · No. 2:24-cv-00371-PA-AGR · Honorable Percy Anderson*

## REPLY BRIEF OF PLAINTIFF-APPELLANT

KEVIN MINTZER
(km@mintzerfirm.com)
LAW OFFICE OF
  KEVIN MINTZER, P.C.
1350 Broadway
Suite 1810
New York, MY 10018
(646) 843-8180

OMAR H. BENGALI
(obengali@girardbengali.com)
GIRARD BENGALI, APC
355 S Grand Avenue
Suite 2450
Los Angeles, CA 90071
(323) 302-8300

DOUGLAS H. WIGDOR
(dwigdor@wigdorlaw.com)
MEREDITH A. FIRETOG
(mfiretog@wigdorlaw.com)
WIGDOR LLP
85 5th Avenue, 5th Floor
New York, NY 10003
(212) 257-6800

*Attorneys for Appellant Kellye Croft*

 

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................ iii

PRELIMINARY STATEMENT ........................................................... 1

ARGUMENT ................................................................................... 3

I.    CROFT HAS PLAUSIBLY ALLEGED A SEX
    TRAFFICKING CLAIM AGAINST THE DOLAN
    DEFENDANTS ......................................................................... 3

    A.    The TVPRA is Not Limited to Claims Sounding in
        Slavery .......................................................................... 3

    B.    The District Court Erred in Holding that Croft Did Not
        Plead a Commercial Sex Act ....................................... 4

        1.    Cash Payments and Travel Benefits ................... 4

        2.    Promises of Career Advancement ...................... 6

    C.    The Dolan Defendants' Alternative Grounds are Not
        Properly Before this Court and, in Any Case, Lack
        Merit .......................................................................... 7

        1.    Defendants Alternative Arguments Were Not
            Presented to the District Court and Thus Should
            Not Be Considered on Appeal ........................... 8

        2.    The SAC Plausibly Alleges that the Dolan
            Defendants Knowingly Used Illicit Means to
            Cause Croft to Engage in Commercial Sex Acts ........... 10

            a.    Croft Plausibly Alleges Fraud ................ 10

                i.    Dolan Personally Participated in the
                    Fraud ......................................... 12

                ii.    Defendants Made Essential,
                    Material, and Causal
                    Misrepresentations to Croft ........ 14

            b.    Croft Plausibly Pleads Coercion ........... 17

i

      c.     The SAC Plausibly Alleges that the Dolan Defendants Committed an Enumerated Act ...................................................................20

II.     CROFT HAS PLAUSIBLY ALLEGED SEX TRAFFICKING BENECIARY CLAIMS AGAINST THE AZOFF ENTITIES...............................................................21

     A.     The Azoff Entities Fail to Appropriately Apply Rule 12(b)(6) Standards, Including Reading the SAC as a Whole ...................................................................21

     B.     Croft Need Only Plead that the Azoff Defendants Should Have Known About Dolan's Sex Trafficking, Not That They Had "Clear Notice" or Actual Knowledge ...................................................................25

     C.     The SAC Plausibly Alleges Beneficiary Liability Under Vicarious Liability Principles .........................................29

CONCLUSION ...................................................................33

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Acevedo v. eXp Realty, LLC,*
    713 F. Supp. 3d 740 (C.D. Cal. 2024)..............................................................27

*Aguero v. Esnoz,*
    No. 22 Civ. 01237 (KM), 2024 WL 519786 (E.D. Cal. Feb. 9, 2024) .......... 25-26

*Anderson News, L.L.C. v. Am. Media, Inc.,*
    680 F.3d 162 (2d Cir. 2012) ..........................................................................31

*Armstrong v. Brown,*
    768 F.3d 975 (9th Cir. 2014) ...........................................................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................. 23, 25

*Bates v. Sequel Youth & Fam. Servs., LLC,*
    No. 23 Civ. 01063 (RDP), 2024 WL 3316989
    (N.D. Ala. July 5, 2024) ..................................................................................24

*Doe 1 v. Deutsche Bank Aktiengesellschaft,*
    671 F. Supp. 3d 387 (S.D.N.Y 2023).................................................................27

*Doe by Doe v. Piraino,*
    688 F. Supp. 3d 635 (M.D. Tenn. 2023) ..................................................... 28, 33

*Domain Name Comm'n Ltd. v. DomainTools, LLC,*
    781 F.App'x 604 (9th Cir. 2019).........................................................................9

*Eckhart v. Fox News Network, LLC,*
    No. 20 Civ. 5593 (RA), 2021 WL 4124616
    (S.D.N.Y. Sept. 9, 2021) ........................................................................ 4, 26, 27

*Edmondson v. Raniere,*
    751 F. Supp. 3d 136 (E.D.N.Y. 2024)................................................................25

*Elec. Const. & Maint. Co. v. Maeda Pac. Corp.,*
    764 F.2d 619 (9th Cir. 1985)............................................................................28

*Hawaiian Paradise Park Corp. v. Friendly Broad. Co.,*
    414 F.2d 750 (9th Cir. 1969)............................................................................31

*In re Amergence Technologies, Inc.*,
  2016 WL 4069550 (Bankr. C.D. Cal. July 27, 2016) ...........................................32

*In re Maui Indus. Loan & Fin. Co., Inc.*,
  88 F. Supp. 3d 1175 (D. Haw. 2015) ...................................................................33

*Jenni Rivera Enters. LLC v. Cintas Acuario Inc.*,
  No. 2:23 Civ. 07847 (SB) (JC), 2024 WL 4799117
  (C.D. Cal. Oct. 28, 2024).....................................................................................33

*Jones v. Combs*,
  No. 24 Civ. 1457 (JPO) n.8, 2025 WL 896829
  (S.D.N.Y. Mar. 24, 2025)....................................................................................12

*Khachatryan v. Blinken*,
  4 F.4th 841 (9th Cir. 2021)............................................................................ 21, 22

*Powers v. Wells Fargo Bank NA*,
  439 F.3d 1043 (9th Cir. 2006)...............................................................................3

*Ratha v. Phatthana Seafood Co.*,
  35 F.4th 1159 (9th Cir. 2022)..............................................................................26

*Richardson v. NW Univ.*,
  No. 21 Civ. 00522 (EEC), 2023 WL 6197447
  (N.D. Ill. Sept. 21, 2023)....................................................................................19

*Robinson v. Jewell*,
  790 F.3d 910 (9th Cir. 2015)..................................................................................9

*Schneider v. Osg, LLC*,
  No. 22 Civ. 7686 (AMD) (VMS), 2024 WL 1308690
  (E.D.N.Y. Mar. 27, 2024)....................................................................................19

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011)..............................................................................14

*United States v. Holmes*,
  121 F.4th 727 (9th Cir. 2024)................................................................................8

*United States v. Maynes*,
  880 F.3d 110 (4th Cir. 2018)......................................................................... 16, 17

*United States v. Milheiser*,
  98 F.4th 935 (9th Cir. 2024)......................................................................... 14, 15

iv

*United States v. Smith*,
   719 F.3d 1120 (9th Cir. 2013) ................................................................10

*United States v. Taylor*,
   44 F.4th 779 (8th Cir. 2022) ......................................................... 10, 11

*Whisper Soft Mills, Inc. v. N.L.R.B.*,
   754 F.2d 1381 (9th Cir. 1984) ............................................................29

## Statutes & Other Authorities:

18 U.S.C. § 1341 ...................................................................................15

18 U.S.C. § 1591 ............................................................................ 15, 27

18 U.S.C. § 1591(a)(1) .........................................................................30

18 U.S.C. § 1591(e)(2)(B) ....................................................................17

18 U.S.C. § 1591(e)(5) ................................................................... 17, 19

18 U.S.C. § 1595 .......................................................................... 26, 27, 28

18 U.S.C. § 1595(a) ...........................................................................3, 25

Fed. R. Civ. P. 9(b) ............................................................. 2, 8, 12, 13

Restatement (Third) Of Agency § 1.01 .................................................29

Rule 12(b)(6) ...................................................................................26, 30

## <u>PRELIMINARY STATEMENT</u>[1]

In opposing Kellye Croft's appeal of the dismissal of her sex trafficking claims, the Defendants expend little effort attempting to defend the District Court's decision that Croft failed to plead a commercial sex act under the TVPRA. That holding should not be affirmed, as the SAC plausibly pleads that Croft received money, free travel, and offers of career assistance in exchange for sex with James Dolan. The Dolan Defendants' argument that Croft did not plead a knowing exchange of things of value for sex is belied by allegations in the SAC showing that such an exchange took place. On a motion to dismiss, the District Court erred in making factual findings based on its assessment of what it believed more likely occurred.

Knowing the District Court's decision rests on shaky ground, the Dolan Defendants devote the vast majority of their arguments to alternative grounds that the District Court did not decide. But they face two problems. *First*, the main arguments upon which they seek affirmance were not raised in the District Court, and thus are waived. In particular, the Dolan Defendants never argued below that

---

[1]     All defined terms are from the Opening Brief of Plaintiff-Appellant Kellye Croft ("Opening Br."), Dkt. No. 25.1. Citations are to Volumes 1 to 7 of the Record Excerpts, Dkt. 26.1 to 26.8. Other citations within are to the Answering Brief of Defendants-Appellees James Dolan and JD and the Straight Shot ("Dolan Br."), Dkt. 39.1, and the Answering Brief of the Defendants-Appellees Azoff Entities ("Azoff Br."), Dkt. 40.1.

Croft's fraud allegations were deficient because they were not sufficiently particular under Fed. R. Civ. P. 9(b) or that Croft did not plausibly allege materiality, essentiality, or proximate cause. Those contentions are improperly raised for the first time to this Court, which should decline to consider them. *Second*, the Dolan Defendants' new arguments lack merit because Croft's fraud and coercion allegations are properly pleaded. In arguing otherwise, the Dolan Defendants make legal errors such as asking the Court to apply an "essence of the exchange" fraud doctrine that has never been, and should not be, applied to TVPRA claims. But mostly, as with their argument related to commercial sex acts, the Dolan Defendants mischaracterize the SAC and fail to apply the correct motion to dismiss standards. Properly considered, Croft has more than plausibly pleaded that the Dolan Defendants transported and harbored her, knowing that fraud and coercion would cause her to engage in commercial sex acts.

The Azoff Entities' arguments to affirm the District Court's holding dismissing Croft's sex trafficking beneficiary claim suffer from similar flaws. Rather than consider the allegations as a whole and afford Croft the benefit of all reasonable inferences, the Azoff Entities consider each red flag that should have alerted them that Dolan was engaged in sex trafficking in isolation and ask the Court to assume the most innocent explanation for each circumstance. Beyond that overarching error, the Azoff Entities mistakenly contend that Croft must be able to

2

allege that it was aware of "specific and obvious" signs of sex trafficking. But adopting such a requirement would improperly change the sex trafficking beneficiary cause of action from one sounding in negligence to one requiring a knowing violation, which contradicts the text of 18 U.S.C. § 1595(a). And the Azoff Entities make another legal error in arguing that they cannot be vicariously liable for Dolan's conduct as their agent merely because they allowed him free rein to do as he pleased in the context of their joint venture. Such a position is contrary to well-established agency law principles, as is the Azoff Defendants' related claim that they are absolved from responsibility for Dolan's behavior merely because Dolan, in sexually exploiting Croft, was acting in his own interest.

For these reasons, and as explained below, the District Court's holding should be reversed.

## **ARGUMENT**

### I. **CROFT HAS PLAUSIBLY ALLEGED A SEX TRAFFICKING CLAIM AGAINST THE DOLAN DEFENDANTS**

#### A. **The TVPRA is Not Limited to Claims Sounding in Slavery**

The Dolan Defendants maintain that Croft's trafficking claims fail because the TVPRA is meant only to address "a contemporary manifestation of slavery," Dolan Br. 1, 18, 43 (citing H.R. Rep 106-487). But statutes must be interpreted based on their text, not legislative history. See *Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045 (9th Cir. 2006). Nothing in the text of the TVPRA, as quoted in

3

Croft's opening brief, Opening Br. 19, suggests that it should be understood to cover only slavery and similar offenses. For that reason, courts have consistently rejected the Dolan Defendants' argument that the TVPRA only applies to archetypes of human trafficking and contemporary slavery. *See, e.g., Eckhart v. Fox News Network, LLC*, No. 20 Civ. 5593 (RA), 2021 WL 4124616, at *7 (S.D.N.Y. Sept. 9, 2021) (citing cases).

### B. The District Court Erred in Holding that Croft Did Not Plead a Commercial Sex Act

The Dolan Defendants offer little to defend the District Court's holding that Croft did not sufficiently plead a commercial sex act. Dolan Br. 44-52. They concede that Plaintiff was not required to allege that anyone offered her an express quid pro quo. *Id.* at 49. Yet they still maintain there should be no inference of a causal connection between Croft receiving something of value and having sex with Dolan because Plaintiff purportedly pleads only an "unintended and unknowing coincidence." *Id.* at 45. That is wrong.

#### 1. *Cash Payments and Travel Benefits*

As to the cash payments and travel accommodations Defendants provided to Croft, the Dolan Defendants, echoing the District Court, assert that the "obvious" alternative explanation to Croft being paid for sex with Dolan is that she received these things of value for providing massage services. Dolan Br. 46-47. But they continue to avoid the reality of Croft's pleading. Not once was Croft asked to

4

perform massage services for the Eagles—the ostensible reason for her invitation—and she spent most of her "work" time, by herself, with nothing to do.  3-ER-388 (¶ 63).  In contrast, on the days where there were no Eagles shows, Croft would inevitably be summoned by Dolan for sex in his hotel room, which, conveniently for Dolan, was the same hotel where Croft was put up.  3-ER-386, 388 (¶¶ 58, 64).  The plausible inference from these facts, and the one Croft should have received from the District Court on a motion to dismiss, is that Defendants paid Croft for sex.  Or at the very least, that Defendants paid Croft for sex *and* for the minimal amount of massage work she performed for tour members other than Eagles, an exchange that would still satisfy the definition of a commercial sex act.  *See* Opening Br. 25.  Given the choice between two sets of inferences—that she was a paid masseuse, or that her role as a masseuse was a fraudulent pretext—the District Court was not entitled to choose the inference it preferred.  *See* 1-ER-4.

Likewise unpersuasive is the argument the Azoff Entities did not know that Dolan was having sex with Croft so they could not have been paying Croft for that purpose.  First, the SAC alleges that the Azoff Entities did know that Dolan was using Croft for sex.  3-ER-387-89 (¶¶ 62, 65, 70).  Second, no matter what the Azoff Entities knew, Croft has alleged that they invited her to join the Los Angeles part of the tour at Dolan's behest.  3-ER-382, 384 (¶¶ 47, 53).  Third, at least some of the

money Croft received in Los Angeles was paid directly by Dolan's agents. 3-ER-388 (¶¶ 65, 66).

The Dolan Defendants also assert that Croft's allegations about her receipt of money and travel benefits are insufficient to establish that the sex was commercial because, they say, receiving money to be "available for sex" is not receiving money "in exchange for sex." Dolan Br. 47-48. But this hairsplitting does not help Defendants. Croft was not just hypothetically "available" to Dolan; he repeatedly initiated unwelcome sexual encounters with her. 3-ER-387-89, 401 (¶¶ 62-67,119).

### 2.    *Promises of Career Advancement*

The Dolan Defendants next argue that Dolan's promises of career assistance cannot be a "thing of value" because the facts do not support the inference of a knowing exchange of sex for career opportunities. But the SAC, read reasonably and as a whole, depicts an exchange. Beginning in Miami, Dolan made sure that Croft understood that he held enormous power over the Eagles tour and its personnel, including her role. 3-ER-380-81 (¶¶ 37-43). Immediately before sexually forcing himself on her, Dolan suggested that he had "fixed" a problem that Croft had with the Eagles tour manager by having him fired and having the Eagles lead singer apologize to her. 3-ER-380-82 (¶¶ 37, 45). In that context, in which Dolan extracted sex from Croft as repayment for his assistance, it is reasonable to infer that Dolan's later offers of career assistance to Croft were not unconditional, but came with the

6

expectation that Croft would continue to satisfy his sexual demands. Croft certainly understood them as such. 3-ER-382, 389 (¶¶ 46, 67). Thus, the SAC indeed supports a finding that Dolan's offers of professional assistance were contingent on sexual interaction between him and Croft.[2] For this additional reason, the Court should reverse the District Court's holding that Croft failed to plead a commercial sex act.

### C.    The Dolan Defendants' Alternative Grounds are Not Properly Before this Court and, in Any Case, Lack Merit

Unable to show that the District Court was correct, the Dolan Defendants mainly seek affirmance on grounds that the District Court did not decide. In particular, the Dolan Defendants maintain that Croft does not plausibly plead that they knowingly used fraud, coercion, or other illicit means to have her commit a commercial sex act (the "illicit means" element). They also claim that Croft has not pleaded they committed an "enumerated act" under the TVPRA, including transporting or harboring. But the Court need not reach these arguments because, as explained below, they were not made to the District Court. In any case, they are wrong.

---

[2]    For this reason, the Dolan Defendants' effort to distinguish the cases on this point, including those involving Harvey Weinstein, see Opening Br. 28, are unpersuasive.

1.    *Defendants Alternative Arguments Were Not Presented to the District Court and Thus Should Not Be Considered on Appeal*

The Court will generally not consider arguments unless they have first been made to the District Court. *See United States v. Holmes*, 121 F.4th 727, 739 (9th Cir. 2024). Despite this principle, which the Dolan Defendants insist be applied to Croft, Dolan Br. 43, n.13 and n.15, they improperly advance a host of arguments they failed to present below.

As to the illicit means element, in their motion to dismiss to the District Court, the Dolan Defendants argued only that Croft had not sufficiently pleaded that Dolan knew that fraud, force, or coercion would be used to cause Croft to engage in a commercial sex act because no prior pattern of such behavior by Dolan or modus operandi was alleged. *See* 2-ER-133-35. They have abandoned that argument on appeal. Instead, as to fraud, the Dolan Defendants now argue that Croft has insufficiently pleaded "materiality," "essentiality," and proximate causation. Dolan Br. 27-37. But those contentions—or even those words—were not included in the Dolan Defendants' motion below. *Id.* The arguments are thus waived. *See Armstrong v. Brown*, 768 F.3d 975, 981 (9th Cir. 2014) ("[A]n issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it.") (internal quotation omitted).

Nor did the Dolan Defendants argue to the District Court that Plaintiff's fraud allegations did not meet the pleading standards of Fed. R. Civ. P. 9(b). *See* 2-ER-

133-35.  Similarly, the Dolan Defendants did not argue below that Croft's coercion allegations are insufficient because they are "backward looking," or that Plaintiff did not plausibly allege an "enumerated act" such a transporting or harboring.  These are all new arguments improperly raised for the first time on appeal.

Attempting to show that their arguments are what they have "argued all along," Dolan Br. 21, the Dolan Defendants quote from their brief to the District Court in which they argued, as to the "illicit means" element only, that the "SAC fails to allege an enumerated act by the Dolan Defendants that is prohibited under the TVPRA, committed with the knowledge that force, fraud, or coercion would be used to perpetrate a commercial sex act."  *Id.* (quoting 2-ER-129).  But that level of generality is not sufficient to have provided the District Court or Croft with notice of the arguments they have made here.  *See Domain Name Comm'n Ltd. v. DomainTools, LLC*, 781 F.App'x 604, n.2 (9th Cir. 2019) (holding that party forfeited "specific argument on appeal by not making it before the district court"); *Robinson v. Jewell*, 790 F.3d 910, 915 (9th Cir. 2015) (declining to consider on appeal theories that were not raised in the district court).  Plaintiff would be prejudiced if this Court were to now consider these arguments because she has been denied any opportunity to amend her complaint to address purported deficiencies based on any of these previously unraised issues.  This Court should thus decline to entertain those arguments.  Dolan Br.  22-43, 51-52.

> ### 2. *The SAC Plausibly Alleges that the Dolan Defendants Knowingly Used Illicit Means to Cause Croft to Engage in Commercial Sex Acts*

Even if the Court were to consider the Dolan Defendants' new arguments, they provide no basis for affirmance. Croft plausibly alleges that the Dolan Defendants, acting with the Azoff Entities, transported Croft to California and harbored her there knowing they were using fraud and coercion to have her commit a commercial sex act.

### a.    Croft Plausibly Alleges Fraud

"Fraud" is not defined in the TVPRA, so this Court applies the word's ordinary meaning: "an instance or an act of trickery or deceit especially when involving misrepresentation." *United States v. Smith*, 719 F.3d 1120, 1125 (9th Cir. 2013) (internal quotation omitted and cleaned up); *see also United States v. Taylor*, 44 F.4th 779, 790 (8th Cir. 2022) (in TVPRA case, recognizing that the common meaning of fraud is "deception practiced in order to induce another") (citation omitted). That is what Croft alleged here.

To summarize: in late 2013, a representative from the Azoff Entities, at Dolan's request, invited Croft to join the Eagles tour in Los Angeles to perform massage services for the Eagles at their show at the refurbished L.A. Forum. 3-ER-382-83, 386 (¶¶ 47-48, 58). Croft accepted the invitation believing she would be providing legitimate services to the Eagles, but after she arrived in Los Angeles, it

10

became apparent that the Eagles had no need for Croft's services. 3-ER-387 (¶ 59). Not one member of the Eagles signed up for a massage with Croft, and she spent most of her time with nothing to do. 3-ER-386 (¶ 58). Contrary to what Croft had been told, the real reason that Croft was transported to California was that she could provide sexual services to Dolan, whom Croft did not even know would be on the tour when she accepted the invitation to Los Angeles. 3-ER-386-87 (¶ 62). Moreover, to facilitate Dolan's sexual exploitation of Croft, Defendants arranged for Croft to stay at the Peninsula Hotel, where Dolan and his band were staying, not where the Eagles or the other tour staff were staying. 3-ER-386 (¶ 56). This arrangement, a departure from Croft's work on the tour, made it possible for Dolan to summon Croft to his hotel room for unwelcome sexual encounters. *Id.*

Accepting these facts as true, a factfinder could conclude that the Dolan Defendants, acting in concert with their joint venture partner, defrauded Croft by transporting her to Los Angeles to cause her to engage in commercial sex acts. *See Taylor*, 44 F.4th at 790 (affirming verdict that TVPRA criminal defendant engaged in fraud because he hired a woman to provide legitimate massages while knowing his clients would expect her to provide sexual services). Like the defendant in *Taylor*, Defendants here deceived Croft by telling her that she was being flown to Los Angeles to provide massage services for the Eagles. It was only after she accepted the opportunity that she discovered the Eagles had no need for her massage

services, and that the real purpose for her going to Los Angeles was to satisfy Dolan's sexual demands. Having been induced to travel to California based on a lie, and facing Dolan – a powerful billionaire who had recently sexually forced himself on her, and who could control her career opportunities – Croft submitted to Dolan's sexual demands.

Disputing Croft's fraud allegations, the Dolan Defendants argue that (1) Croft does not plead misrepresentations by Dolan and (2) any alleged misrepresentations to Croft were not essential or material and did not cause her to engage in a commercial sex act. Each of these arguments fails.

        *i.       Dolan Personally Participated in the Fraud*

The Dolan Defendants maintain that Dolan had nothing to do with lying to Croft about the reasons she was being transported Los Angeles. Not so. To begin, the SAC expressly alleges that "Croft was flown out to Los Angeles, *at Dolan's request*, to satisfy his sexual demands." 3-ER-386-87 (¶ 62) (emphasis added). Dolan argues that this allegation should be disregarded because it is made on information and belief, which, he claims, is not permitted under Fed. R. Civ. P. 9(b). But Dolan cites no authority that Rule 9(b) standards apply to a claim under the TVPRA merely because fraud is alleged to be part of the claim. *See Jones v. Combs* No. 24 Civ. 1457 (JPO) n.8, 2025 WL 896829 (S.D.N.Y. Mar. 24, 2025)

12

(noting that the Court had identified no authority for applying Rule 9(b) standards to TVPRA sounding in fraud).

Even if Rule 9(b) applied (which Dolan did not argue below), the SAC provides ample basis to allege that Dolan personally requested Croft be brought to Los Angeles. Only two months before Croft was invited to Los Angeles, Dolan had sexually forced himself on Croft during the Miami leg of the Eagles tour. Thus, contrary to the Dolan Defendants' claim that Dolan was too busy and too important to be involved in Croft's whereabouts, Dolan Br. 26, he had demonstrated a keen personal interest in Croft. Further pointing to Dolan's involvement, as discussed above, the Eagles had no need for Croft's services in Los Angeles and, unlike in previous tour locations where Croft stayed at the Eagles' hotel, this time she was placed in Dolan's hotel. Beyond those connections to Dolan, Croft's flight and hotel were paid for on the "JD credit card" and Dolan's tour manager wired Croft $8,400 for the Los Angeles leg of the tour even though Croft provided almost no services for Dolan's band. 3-ER-388-89 (¶¶ 65-66).[3]

---

[3]      Contrary to the Dolan Defendants' assertion, Dolan Br. 26, the SAC does *not* allege that Croft learned that the JD credit card was used to pay her expenses before she traveled to Los Angeles. *See* 3-ER-382-83 (¶ 48) (alleging that Croft only "later learned" that she was working for Dolan on the L.A. tour), 3-ER-384 (¶ 52) (alleging that Croft did not know when she accepted the L.A. invitation that Dolan or his band would be opening for the Eagles on that leg of the tour.)

While the Dolan Defendants posit for the first time on appeal that the "JD credit card" may belong to the Azoff Entities' accountant who had the same initials as James Dolan, they cannot explain why an accountant would charge Croft's travel expenses to his personal credit card. The far more likely explanation is that, as alleged, "JD" referred to Dolan or his band, JD and the Straight Shot. 3-ER-382-83 (¶ 48). Even if the Dolan Defendants' explanation of the source of the JD credit card is plausible, that is not a basis to dismiss Plaintiff's TVPRA claim. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Based on the totality of the facts alleged, Croft has sufficiently pleaded Dolan's personal involvement in the fraud to transport her to Los Angeles.

ii.     *Defendants Made Essential, Material, and Causal Misrepresentations to Croft*

The Dolan Defendants next assert, relying on *United States v. Milheiser*, 98 F.4th 935 (9th Cir. 2024), that Croft does not plead that the misrepresentations made to her to get her to come to Los Angeles were "essential to the bargained-for exchange." Dolan Br. 27. But this argument—again, not raised in the District Court—fails for two separate reasons.

First, there is no basis to apply *Milheiser*, a mail fraud case, to Croft's fraud allegation under the TVPRA. The Dolan Defendants do not cite a single case from this Court or any other holding that the "essential to the bargain" rule in *Milheiser* applies in the TVPRA context. And for good reason. Although the Dolan

14

Defendants assert that "fraud is fraud," Dolan Br. 28 n.7, the TVPRA and the mail fraud statute use very different language and have different purposes. The latter statute, which prohibits "any scheme or artifice to defraud" or "obtaining money or property by means of false or fraudulent pretenses, representations, or promises," 18 U.S.C. § 1341, applies *only* to "schemes to deprive the victim of money or property." *Milheiser*, 98 F.4th at 942 (9th Cir. 2024) (internal quotation omitted). Given that scope, the fraudulent misrepresentations, to violate that statute, must go to the essence of the money or property being exchanged (i.e., the "nature of the bargain"). *Id*. at 944. In contrast, the prohibition on "fraud" in TVPRA, 18 U.S.C. 1591, is *not* limited to the deprivation of money or property, but is designed to prevent victims from engaging in commercial sex as a result of lies and deceptions. It would thus be illogical to conclude, as the Dolan Defendants urge, that lies that are only actionable under the TVPRA if they directly relate to the essence of an exchange of money or property.

Second, even if *Milheiser* could appropriately be applied to the TVPRA, the SAC, fairly construed, meets such a requirement. The fraud Croft alleges—being transported to California under the false pretense that she would be providing massage services to the Eagles, when in reality she was brought to California to satisfy Dolan's sexual demands—goes to the essence of how and why she was trafficked. Unlike the cases cited by the Dolan Defendants, including *Milheiser,* the

lie here was not a "collateral matter" or an incidental deception. The misrepresentation induced Croft to travel interstate, intentionally placing her in a position of vulnerability where Dolan, an immensely powerful and wealthy man, could pressure her to engage in unwanted sexual acts. 3-ER-381-82, 389 (¶¶ 43, 46, 67).

The Dolan Defendants' assertion that the deception was irrelevant because Croft allegedly "knew what she was doing" and "why," Dolan Br. 30, is yet another attempt to distort the SAC and make the Court adopt an inference adverse to Plaintiff. Croft has alleged she could not reject Dolan's sexual demands because, given his power and her feelings of isolation on the tour, *she was terrified of upsetting him.* 3-ER-389 (¶ 67). Croft also did not want to lose her work for the Eagles or the other work for professional musicians that Dolan had made clear he could arrange for her. 3-ER-382 (¶ 45). But there would have been no sexual exploitation without the Dolan Defendants' fraudulent inducement of Croft to join the L.A. portion of the tour.

The Dolan Defendants' materiality and proximate causation arguments, which also were not made to the District Court, similarly fail. *United States v. Maynes*, 880 F.3d 110, 114 (4th Cir. 2018), the primary materiality case the Dolan Defendants rely on, recognizes that any misrepresentation made by a defendant with knowledge that it will cause a person to engage in a commercial sex act is necessarily a material

representation. *Id.* Thus, even by the Dolan Defendants' authority, causation between the fraud and commercial sex act is sufficient to establish materiality. In any case, the fraud here was causal, as well as objectively and subjectively material. Objectively, no reasonable person in Croft's position, having recently been forced by Dolan to engage in unwelcome sexual acts with him, would have accepted the invitation for the Los Angeles tour knowing that the true purpose of her presence there was to engage in more unwanted sexual contact.[4] Likewise, the fraud was subjectively impactful because the proximity to Dolan in California and her fear of upsetting him is what caused her to engage in commercial sex acts, not merely Dolan's offers of her career opportunities. 3-ER-386, 389 (¶¶ 58, 67).

### b.    Croft Plausibly Pleads Coercion

The SAC pleads that, in addition to fraud, the Dolan Defendants knowingly used coercion to cause Croft to engage in commercial sex acts. Croft reasonably believed that refusing to have sex with Dolan would result in significantly serious financial harm. *See* 18 U.S.C. § 1591(e)(2)(B) (defining "coercion" to include any scheme or plan intended to cause a person to believe that the failure to perform an act would cause "serious harm"); *id.* § 1591(e)(5) (defining "serious harm" to mean

---

[4]    Contrary to Dolan's argument, Dolan Br. 35, Croft does not claim receiving a flight and hotel accommodation caused her to engage in commercial sex acts. Rather, she alleges that she was lied to about the reasons she was invited to California, which caused her to be in close proximity to be exploited by an exceptionally wealthy and powerful man she was reasonably afraid to rebuff.

"any harm . . . including . . . financial . . . harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.").

Contrary to the Dolan Defendants' argument, Dolan Br. 39, the SAC indeed pleads "forward-looking" coercive statements by Dolan. First, during the Miami leg of the tour, Dolan made it clear to Croft that he had hiring and firing power over the personnel on the Eagles tour, 3-ER-377-80 (¶¶ 30-38), which would include Croft. Dolan also said he could have her included in the European stage of the Eagles tour. 3-ER-380 (¶ 39). In the same timeframe, Dolan suggested that Croft would have more work opportunities through him as the owner of Madison Square Garden. 3-ER-382 (¶ 45).[5] These statements pre-dated Dolan's requests for sex from Croft in Los Angeles.

The Dolan Defendants try to downplay the seriousness of Dolan's conduct by arguing that "losing hoped-for opportunities to massage musicians" is not coercion. Dolan Br. 40. Here again, though, they improperly construe the SAC in their favor. Croft considered working on the Eagles tour the career break of her lifetime, and she

---

[5]    These statements by Dolan are not dated in the SAC, but given the context of the other events described around the same time, the reasonable reading of the SAC is that they occurred when Croft and Dolan were in Miami, around November 2013. 3-ER-379-380 (¶ 36).

also understood that rebuffing Dolan and alienating him would jeopardize that, as well as the other potential work that Dolan was suggesting he could get her.  3-ER-375, 389 (¶¶ 24, 67).  Given what she was paid on the Los Angeles tour, 3-ER-388 (¶ 65), it may be inferred that these opportunities would collectively be worth tens of thousands of dollars, possibly more.  While the Dolan Defendants suggest that Croft was a savvy and independent businesswoman who should have been able to repel Dolan, Dolan Br. 35, Croft's success in opening a "small studio" to offer massage therapy, 3-ER-375 (¶ 23), hardly prepared her for dealing with James Dolan, the billionaire owner of Madison Square Garden.  Indeed, before touring with the Eagles, Croft had never even spent more than a few days away from her community in Tennessee.  3-ER-376 (¶ 25).  Considering "all the surrounding circumstances," 18 U.S.C. 1591(e)(5), it is reasonable to conclude that Croft, isolated and vulnerable in Los Angeles, would feel as though she could suffer severe personal harm if she rejected Dolan's advances. *See Schneider v. Osg, LLC*, No. 22 Civ. 7686 (AMD) (VMS), 2024 WL 1308690, *5 (E.D.N.Y. Mar. 27, 2024) (for pleading purposes under TVPRA, prospect of losing largest client could be considered serious harm); *Richardson v. NW Univ.*, No. 21 Civ. 00522 (EEC), 2023 WL 6197447, *6 (N.D. Ill. Sept. 21, 2023) (risk of losing $10,000 in scholarships

19

and mandatory repayment of same amount sufficient to state claim for serious harm under TVPRA).[6]

### c. The SAC Plausibly Alleges that the Dolan Defendants Committed an Enumerated Act

The Dolan Defendants' final argument for affirmance, not made to the District Court, is that Croft does not sufficiently allege that she was transported or harbored in violation of the TVPRA her because her flight was free, her hotel was "luxur[ious]," and Dolan was not involved in the travel arrangements. Dolan Br. 51-52. As to the first and second points, liability under the TVPRA does not depend on the price or quality of the hotel or airline. The Dolan Defendants cite no authority suggesting otherwise. As for Dolan's role in transporting or harboring Croft, a factfinder could reasonably conclude that he was personally involved for the same reasons it may be inferred he was involved in defrauding her, described above. *See* Section II(A)(1), 12-13, supra. For these reasons, the Dolan Defendants' alternative arguments for dismissal each fail.

---

[6]    Most of the cases cases cited by the Dolan Defendants on this point, Dolan Br. 40-41, are inapposite because they were decided on summary judgment, following the development of a factual record demonstrating that the plaintiffs did not face the prospect of serious financial harm. Here, for pleading purposes, consistent with the cases cited above, Croft has cleared the bar for alleging serious harm.

## II.    CROFT HAS PLAUSIBLY ALLEGED SEX TRAFFICKING BENECIARY CLAIMS AGAINST THE AZOFF ENTITIES

### A.    The Azoff Entities Fail to Appropriately Apply Rule 12(b)(6) Standards, Including Reading the SAC as a Whole

The parties agree that the allegations against the Azoff Defendants turn on whether the Azoff Defendants (and their agents and employees) had constructive knowledge of the sex trafficking of Croft sufficient to plead a beneficiary liability theory under the TVPRA. But the Azoff Entities, like the District Court, (1) construe facts separately from one another, rather than as part of a whole narrative and (2) draw inferences against Croft from those piecemeal facts. A court's "obligation in reviewing the motion to dismiss is to examine the allegations of the complaint as a whole and to draw all reasonable inferences in favor of [Plaintiff]." *Khachatryan v. Blinken*, 4 F.4th 841, 854 (9th Cir. 2021). Here, the Azoff Defendants improperly reverse the required analysis, dividing the allegations of the SAC into three sets of red flags and explaining why each red flag, in isolation, fails to establish their constructive knowledge. Azoff Br. 23-26.

Thus, the Azoff Defendants argue that there was not "anything suspicious" about Dolan paying for Croft's travel and then having her stay at his hotel, Azoff Br. 23-24, that no inference can be drawn from the Azoff Defendants providing Croft venue pay in spite of knowing she did little work, Azoff Br. 24-25, and that news of the sexual exploitation of Croft never spread to any employee of the Azoff

21

Defendants, *id.* at 26-27. But they never address "the complaint as a whole," as is required. *Khachatryan* 4 F.4th at 854. Consideration of the whole narrative shows that the Azoff Defendants had at least constructive knowledge that the Dolan Defendants were sex trafficking Croft. The SAC alleges that Croft's lodging with Dolan and his paying for flights were departures from previous tours, when Croft stayed in the same accommodations as the Eagles. 3-ER-384 (¶ 53). Croft was also doing little work on the Los Angeles tour, 3-ER-387 (¶¶ 59-60), which would have been known to the Azoff Defendants, who were involved in transporting Croft, dealing with her employment, and paying her as an employee of the tour. 3-ER-381 (¶ 43). Contrary to the Azoff Entities' suggestion, moreover, the lack of a genuine need for Croft's services should have been known to them when she was invited on the tour, considering that not a single member of the Eagles—the group she was supposed to be working for—utilized her services during the entire Los Angeles tour. 3-ER-387 (¶ 61). In other words, the SAC alleges, as the District Court acknowledged, that the "Azoff Defendants were an integral part of the fraud to get Plaintiff to agree to come to California." 1-ER-8.[7]

---

[7] Contrary to the Azoff Defendants' spin, Azoff Br. 31-34, the District Court did credit the allegations that the Azoff Defendants were in on the fraud, as the above quoted sentence from the District Court's Order makes clear.

The Azoff Defendants also knew that Croft's role as a massage therapist made her especially vulnerable to sexual exploitation, as her job required her to touch men who were disrobed.[8]  Moreover, because Dolan openly disclosed to others on the tour that he was having sex with Croft, 3-ER-390-391 (¶¶ 71-72), and even suggested to members of the tour and others that Croft was available for sexual favors, *id.*, it is reasonable to infer that the Azoff Defendants knew Croft had been brought to California for Dolan's sexual gratification.  The inference was particularly warranted in light of (1) the obvious age difference between Croft and Dolan, 3-ER-389 (¶ 67), and (2) the power imbalance between Croft, a young woman from a small town, and Dolan, a wealthy powerful man with many connections 3-ER-369-70, 389 (¶¶ 3, 67).  At the pleading stage, Plaintiff is not required to offer dispositive evidence of her claims, and so it should not matter whether a factfinder *could* believe that employees of the Azoff Defendants thought the relationship between Dolan and Croft was innocent.  *Contra* Azoff Br. 23-24. The allegations, taken together, provide an adequate factual foundation for the inference that the Azoff Defendants knew or should have known that fraud or coercion were being used to have Croft engage in commercial sex acts.

---

[8]     The duties of a masseuse, and the vulnerability of the role, may be considered by the Court applying its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

Besides their failure to consider the SAC's allegations as a whole, the Azoff Defendants also turn the motion to dismiss standard on its head by declining to grant the benefit of reasonable inferences to Croft. Thus, for example, the Azoff Defendants seek to minimize the allegation that Plaintiff stayed in Dolan's hotel by asking the Court to join them in "infer[ring]" that it was "perfectly ordinary" for Croft "to stay in the same hotel as one of her previous clients." Azoff Br. 23. But the SAC alleges that it was not ordinary for Croft to stay in the same hotel as Dolan, particularly because she was supposed to be working for the Eagles and, during her previous tour stints, she stayed in the same hotel as Glenn Frey and was regularly with him and other members of the band. 3-ER-387 (¶ 59). The Azoff Defendants also propose a presumption that an employer will not be charged with constructive knowledge if their employee performs at least some work. *See* Azoff Br. 25 ("she *did*, in fact, perform massages on tour.") That is an unreasonable inference, adverse to Plaintiff, and, if accepted, would facilitate deliberate blindness to trafficking conditions. *See, e.g., Bates v. Sequel Youth & Fam. Servs., LLC*, No. 23 Civ. 01063 (RDP), 2024 WL 3316989, at *8 (N.D. Ala. July 5, 2024) (in a trafficking claim, operators of camps should have realized that students were doubling as workers). Finally, while the Azoff Defendants try to draw a bright line between the knowledge of Dolan's bandmate and the Azoff Defendants' employees, Azoff Br. at 27, because Dolan was so open on the tour about his exploitation of Croft, it may be inferred

such knowledge would have reached employees of the Azoff Defendants, who were close to Dolan and would have interacted regularly with Dolan and his bandmates. 3-SAC-389-91 (¶¶ 70-72). *See Edmondson v. Raniere*, 751 F. Supp. 3d 136, 181 (E.D.N.Y. 2024) (fact that the defendant maintained a close relationship with primary sex traffickers contributed to allegation that the defendant "should have known" about the trafficking). Any alternate inferences are arguments for a jury.

In sum, this is not a case about three discrete red flags, and the Court cannot simply examine each "fact alone," as Defendants urge. Azoff Br. 23. Based on the entire narrative of the SAC, a "common sense" observer in the position of the Azoff Entities, *Ashcroft v. Iqbal*, 566 U.S. at 679, should have concluded that Dolan was fraudulently and coercively co-opting Croft's masseuse role into commercial sexual subservience.

### B. Croft Need Only Plead that the Azoff Defendants Should Have Known About Dolan's Sex Trafficking, Not That They Had "Clear Notice" or Actual Knowledge

The Azoff Defendants acknowledge that, to plausibly plead her beneficiary claim, Croft need only establish that they knew or should have known that Dolan would use force, fraud, or coercion to induce Croft to engage in a commercial sex act. Azoff Br. 20-21. This is a negligence standard. *See* 18 § U.S.C. 1595(a) (referring to beneficiaries who "knew or should have known" about sex trafficking); *Aguero v. Esnoz*, No. 22 Civ. 01237 (KM), 2024 WL 519786, at *4 (E.D. Cal. Feb.

9, 2024) (citing *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022)).   Yet in their discussion of analogous case law, the Azoff Defendants maintain that Croft must show that they had "clear notice" of Dolan's trafficking. Azoff Br. 29.   But "clear notice" would amount to a requirement of actual knowledge, not negligence, and thus should not be adopted here.  Even if other courts have erroneously adopted a "clear notice" standard, this Court should not.

The Azoff Defendants notably cite no controlling authority, or any appellate decision from any jurisdiction, applying their preferred "clear notice" requirement. Instead, they rely on a handful of district court cases.  Azoff Br. 27-32.  But none of those cases purport to set a floor for what must be alleged in different factual circumstances to plead a TVPRA beneficiary claim under the negligence standard of 18 U.S.C. § 1595.  In any case, the Court's role on a Rule 12(b)(6) motion is not merely to ask whether the facts in this case match the facts in some other case. Particularly given the expansive remedial language of the TVPRA, and its adoption of a flexible negligence standard, that would be a misguided approach.

The Azoff Defendants' flawed argument is typified by its discussion of *Eckhart v. Fox News Network, LLC*, No. 20 Civ. 5593 (RA), 2021 WL 4124616, at *11 (S.D.N.Y. Sept. 9, 2021).  The court in that case found that the complaint pled a venture in the employment relationship between Fox News and the primary alleged trafficker, Ed Henry.  *Id.* at *11-12.  The court also recognized that Fox News may

26

well have been "on notice that Henry was engaged in sexual harassment," because it was an "open secret . . . that Mr. Henry was a serial harasser." *Id.* The complaint in *Eckhart,* however, did not allege that Fox News knew about a sexual relationship between the plaintiff and Henry. Here, in contrast, and as discussed above, Plaintiff has plausibly alleged—and the District Court was required to accept—that the Azoff Defendants knew or at least should have known of the sexual relationship between her and Dolan. *See* 1-ER-9 (explaining that the court "assum[ed] that Plaintiff plausibly alleges the Azoff Defendants' knowledge of her sexual relationship with Dolan."). In particular, Croft's allegations that she performed little work, 3-ER-387-89 (¶¶ 60-61), that Dolan made no secret of his sexual exploitation of Croft, 3-ER-389-91 (¶¶ 70-72), and that she was isolated from other tour staff, 3-ER-386, 388 (¶¶ 58, 63), would have put a reasonable observer exercising common sense on notice of her sexual vulnerability, distinguishing this case from *Eckhart.*

The Azoff Entities also repeat an error made by the District Court in relying on cases such as *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387 (S.D.N.Y 2023), which applied an actual knowledge standard under 18 U.S.C. § 1591 rather than the negligence standard contained in 18 U.S.C. § 1595.[9] Similarly,

---

[9]    In *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 779-83 (C.D. Cal. 2024), the court was presented with allegations of a sex trafficking beneficiary's actual knowledge of trafficking, and thus the case does not clarify what must be shown to prove constructive knowledge.

the Court should decline to apply the suggestion in *Doe by Doe v. Piraino*, 688 F. Supp. 3d 635 (M.D. Tenn. 2023), that beneficiary liability will only apply when there are "specific and obvious signs" of "sex trafficking." *Id.* at 651. The *Piraino* court adopted its standard from the distinct context of hotels that are alleged to have benefited from prostitution. But there is no reason that negligence liability under § 1595 should be limited to signs of sex trafficking that are "specific and obvious," which would improperly amend the statute into one requiring actual knowledge. After all, red flags can be missed by a person acting with less than average prudence and caution, while something "specific and obvious" cannot be missed by anyone.

Under a statute as broad as the TVPRA, containing ten predicate acts, several tiers of *mens rea*, and contemplating issues of corporate and indirect liability, it is hardly notable that a new fact pattern such as Croft's might arise that does not perfectly fit existing case law. But that is no reason to dismiss her claims. *See Elec. Const. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985) ("The court should be . . . reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.") (internal quotation omitted).

## C.    The SAC Plausibly Alleges Beneficiary Liability Under Vicarious Liability Principles

The Court should also reinstate Croft's vicarious liability claim.  The Azoff Entities argue that the District Court did not err when it held that they are not vicariously liable for Dolan's sex trafficking because (1) Dolan exercised control over the Azoff Entities and thus could not be their agent, and (2) even if Dolan were an agent of the Azoff Entities, his conduct was not attributable to the Azoff Entities because of the "adverse interest exception."  They are wrong on both accounts.

Contrary to the Azoff Entities' argument, Azoff Br. 38, Croft has not pleaded herself out of her claim by alleging that "Dolan could control the Azoff Entities' business decisions about the Eagles tour," 3-ER-380-381 (¶¶ 39-40), "controlled the purse strings as it related to the reopening of The Forum," 3-ER-380 (¶ 39), and "had profound power over everyone involved in the venue and the tour."  3-ER-386 (¶ 57).  In making its argument, the Azoff Entities ignore the Restatement (Third) and Ninth Circuit authority, cited by Plaintiff in her opening brief, Opening Br. 40-41, describing the principal's responsibility for the acts of its agents.  *See* Restatement (Third) Of Agency § 1.01 cmt. f. ("[T]he principal has a power of control even if the principal has previously agreed with the agent that the principal . . . will not . . . interfere in the agent's exercise of discretion.").  Indeed, the purpose of an agency relationship is that the principal sometimes cedes power to the agent.  *Whisper Soft Mills, Inc. v. N.L.R.B.*, 754 F.2d 1381, 1386 (9th Cir. 1984) ("An essential

29

characteristic of an agency is the power of the agent to commit his principal to business relationships with third parties[.]").  That is exactly what the SAC alleges; that Dolan exercised the control and power ceded to him by the Azoff Defendants with regards to Croft when he participated in "transport[ing]" and "harboring" Croft, 18 U.S.C. § 1591(a)(1), knowing that he would force her into unwanted commercial sex acts.  3-ER-381, 384, 387-88 (¶¶ 43, 54, 62, 64); *see* supra I(C)(2)(c).  Put another way, a corporation cannot wash its hands of a wayward CEO or other officer and avoid liability by arguing that the CEO had control over it and not vice versa. Liability rests on the Azoff Entities if, as alleged, they exercised loose or poor governance—not on the victim of their out-of-control agent.  Faced with these arguments, the Azoff Defendants double down, calling it "nonsense" that there could be a "latent, unexercised right to control Dolan's decisions."  Azoff Br. 38.  But that is exactly the sort of situation that the Restatement contemplates.

While a factfinder at a later stage in the litigation could side with the Azoff Entities' position that Dolan exercised control over them, on a Rule 12(b)(6) motion, the District Court was constrained to follow the theory that favored Plaintiff—that Dolan was an agent in a closely-held joint venture, acting on behalf of the venture. Here, however, the District Court exceeded its role on a motion to dismiss when it decided that "the SAC's allegations are far more consistent with the theory that the Azoff Defendants acted on behalf of Dolan, and not the other way around."  1-ER-

9.  As discussed above in connection with a similar error by the District Court in granting the Dolan Defendants' motion, "[a] court ruling on . . . a motion [to dismiss] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

Similarly, the Azoff Defendants' opposition fails to rebut Plaintiff's apparent agency theory.  They merely deny the reasonable inferences to be drawn from the allegations.  3-ER-382-383 (¶¶ 48-51).  Croft understood, based on the actions of Azoff employees, that she was employed by the Azoff Entities while on the Eagles tour, 3-ER-382-83 ¶¶ (48-51).  Those Azoff employees also represented to her that Dolan was at least partly paying for her presence, *id.* (¶ 48), and they allowed both Dolan and his tour manager to make arrangements for Croft.  3-ER-388-89 (¶ 66). It was also Croft's understanding that Dolan could fire her, which led her to accede to his unwanted sexual advances.  *Id.* (¶ 67).  From these allegations, the Azoff Defendants indeed did "something which reasonably [led Croft] to believe that the agent had they authority he purported to have."  Azoff Br. 39 (quoting *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969)). While the Azoff Defendants dispute the inferences that may be drawn from the allegations in the SAC, Defendants are not entitled to their preferred inferences on a motion to dismiss.

31

Unable to plausibly defend the District Court's holding that Dolan was not their agent, the Azoff Entities next assert that even if Dolan was their agent, his actions could not be attributed to them because his actions were adverse to the Azoff Entities. In so doing, the Azoff Entities ignore the ways that Dolan was acting consistently with their interests. At a minimum, Dolan's efforts towards transporting and harboring Croft resulted in the hiring of an employee who was available to work on the tour, which was consistent in the Azoff Entities' interests. What's more, by participating in trafficking Croft, the Azoff Defendants satisfied their business partner and thereby, it may be inferred, enhanced a critical business relationship. 3-ER-401-2 (¶ 120).

Far from proving Plaintiff wrong, the Azoff Defendants' arguments show why it is inappropriate to apply the adverse interest exception at this stage. They argue that "Dolan allegedly engaged in a secretive plot to traffic Plaintiff to California and sexually exploit her," Azoff Br. 43, making his actions "adverse" to the Azoff Defendants. But this argument depends upon the characterization of the trafficking as "secret," which, as discussed above, is at least disputed. The Azoff Defendants' attempt to rely on a favorable inference about "secrecy" underscores the importance of developing a factual record on the adverse inference exception. *See In re Amergence Technologies, Inc.*, 2016 WL 4069550, at *3 (Bankr. C.D. Cal. July 27, 2016).

32

*Piraino*, 688 F. Supp 3d at 652, is distinguishable because that was a sexual abuse case in which there was no claim that the alleged abuser engaged in TVPRA enumerated acts *on behalf of* the Defendant corporate entity. In contrast, here Dolan and the Azoff Defendants, as alleged, jointly participated in transporting and harboring Croft. Plaintiff's cited cases demonstrate that Dolan's conduct here was not "adverse" to the Azoff Defendants in the clear and affirmative sense required by case law, and the Azoff Defendants' attempts to distinguish those cases are unavailing. *See In re Maui Indus. Loan & Fin. Co., Inc.*, 88 F. Supp. 3d 1175, 1185 (D. Haw. 2015) (for exception to apply, agent must "*totally* abandon[] principal's interest") (citations omitted); *Jenni Rivera Enters. LLC v. Cintas Acuario Inc.*, No. 2:23 Civ. 07847 (SB) (JC), 2024 WL 4799117, at *8 (C.D. Cal. Oct. 28, 2024) (requiring evidence that a party actively "conspired against" the principal's interest).

## CONCLUSION

For the reasons stated above and in Croft's Opening Brief, the District Court's judgment dismissing Croft's TVPRA claims against the Dolan Defendants and the

Azoff Entities should be reversed, Croft's state law claims reinstated, and the case should be remanded for discovery.

Dated: April 9, 2025

Respectfully submitted,

By: _____
    Douglas H. Wigdor

**WIGDOR LLP**

Douglas H. Wigdor
Meredith A. Firetog
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone: (212) 257-6800
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com

**LAW OFFICE OF**
**KEVIN MINTZER, P.C.**

Kevin Mintzer
1350 Broadway, Suite 1810
New York, New York 10018
km@mintzerfirm.com
llk@mintzerfirm.com

**GIRARD BENGALI, APC**

Omar H. Bengali
355 S Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (323) 302-8300
obengali@girardbengali.com

*Attorneys for Appellant Kellye Croft*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**  24-6150

I am the attorney or self-represented party.

**This brief contains 8,269 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3). 1

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties.
    [XX] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  /s/ Douglas H. Wigdor                    **Date**  April 9, 2025